ALBANY,
April, 1824,

Osgood
v.
Manhattan
Company.

WALTER F. OSGOOD and others, plaintiffs in error,
*against*
The PRESIDENT and DIRECTORS of the MANHATTAN COM-
PANY, defendants in error.

The acts or admissions of executors are not evidence against heirs or dev-
isees.

Thus, a petition to the surrogate by executors, for a sale of real estate of
their testatrix, accompanied with a sworn account of the personal estate,
is not evidence to shew the insolvency of the ancestor at the time she
conveyed the real estate in question to certain persons, in an action by a
creditor against her heirs and devisees, seeking to shew that such con-
veyances were voluntary and fraudulent, whereby the subject of them
became assets in the defendants' hands.

Even a judgment against executors is not evidence against the heir.

To make the confessions of one man evidence against another, they must
have a joint interest in possession.

The confession of a grantor, or his executors, after the grant, are not ad-
missible, in evidence, to prejudice the rights of the grantee.

Whether the confession of one of a corporation aggregate be evidence
against the company ? *Quere.*

If improper evidence be given in the court below, though it be merely
cumulative, the judgment will be reversed.

ERROR, from the Supreme Court. The action in that
Court was assumpsit, by the the *President and Directors of*
*the Manhattan Company* against *Walter Franklin Osgood,*
*Edmund Charles Genet* and *Martha B.* his wife, *Samuel*
*Osgood* and *Juliana* his wife, *Susan K. Osgood, De Witt*
*Clinton* and *Maria* his wife, *John L. Norton* and *Sarah*
his wife, and *Hannah Clinton,* which *Walter, Martha, Ju-*
*liana* and *Susan,* were alleged, in the declaration, to be heirs
and devisees, and *Maria, Sarah* and *Hannah,* heirs of *Maria*
*Osgood,* deceased. The action was upon two promissory
notes, the one dated the 25*th July,* 1814, for $6000, paya-
ble at 90 days, the other the 10*th August,* 1814, for $500,
payable in 60 days, both endorsed by *Maria Osgood.* The
memorandum was of *October* term, 1815. The defendants,
*De Witt Clinton* and *Maria* his wife, *John L. Norton* and *Sa-*
*rah* his wife, and *Hannah Clinton,* pleaded *riens per discent,*

and the plaintiffs took judgment of assets *quando acciderint*. The other defendants, *Walter F. Osgood, Edmund C. Genet* and *Martha B.* his wife, *Samuel Osgood* and *Juliana* his wife, and *Susan K. Osgood*, pleaded the general issue, and also, as to the said *Walter, Martha, Juliana* and *Susan, riens per discent* or *devise*, to which the plaintiffs replied assets at the time of the commencement of the suit by descent and devise. The cause was tried before the late Mr. Justice *Van Ness*, at the *New-York* sittings, in *December*, 1816.

ALBANY, April, 1824.

Osgood v. Manhattan Company.

*Samuel Osgood*, the elder, was seised of several houses and lots of land in the city of *New-York*, and made his will, dated the 8*th* of *February*, 1792, by which he devised to his wife, *Maria Osgood*, all the estate, both real and personal, of which he was then possessed, or might be possessed at the time of his decease, and appointed her sole executrix. He afterwards purchased some lots of land at *Greenwich*, and died on the 23*d* of *August*, 1813. *Maria Osgood* was, before and at the time of his death, seized, in her own right, of three several houses and lots of land, situate in *Cherry-street*, in the city of *New-York*, which she conveyed by three several deeds, bearing date the 31*st* of *May*, 1814, in consideration of love and natural affection, to her three daughters, the defendants, *Martha B., Susan K.* and *Juliana*, respectively.

*Maria Osgood* made her will on the 27*th* of *July*, 1814, by which, after several specific bequests of money and chattels, and particularly several bequests to *Walter F. Osgood*, she devised the residue of her real and personal estate to her children, the defendants, *Martha B., Juliana, Walter F.* and *Susan K. Osgood*, and appointed the defendants, *Walter F. Osgood, Samuel Osgood* and *Edmund C. Genet*, her executors. The testatrix died on the 8*th* October, 1814, and the notes in question, which afterwards fell due, remained unpaid. The real estate devised was heavily encumbered by mortgages.

A variety of evidence was produced at the trial, to shew that, at the time of the conveyance to her daughters, Mrs. *Osgood* was insolvent; and, for that purpose, the plaintiffs also produced the petition of her executors to the Surro-

ALBANY,
April, 1824.

Osgood
v.
Manhattan
Company.

gate of the city and county of *New-York*, dated *January 10th*, 1816, stating that the personal estate of the testatrix was insufficient to pay her debts, and requesting the aid of the Surrogate in the premises, pursuant to the statute in such case made and provided ; to which was attached an account between the executors and the estate, with an account of the personal property and debts of the testatrix, omitting to say when they arose, or whether due when Mrs. *Osgood* conveyed. These accounts were sworn to by the executors ; but before any order was made by the Surrogate upon the petition, they declined proceeding farther, alleging that they had acted under a misapprehension. The admission of this testimony was objected to on the part of the defendants, but it was received by the Judge, and the defendants excepted. A considerable part of the debts of the testatrix consisted of endorsements for the accommodation of *Walter F. Osgood.*

The Judge charged the jury strongly in favor of the plaintiffs upon the point whether the deeds from Mrs. *Osgood* to her daughters were voluntary, fraudulent and void as to creditors ; and the estate embraced by them was, consequently, as to the plaintiffs, assets by descent or devise, under the issue joined on the plea of *riens per discent* or *devise,* in the hands of the defendants, who were parties to that issue.

The jury found a verdict for the plaintiffs, on which the Court below gave judgment, in *January* term, 1818 ; and the cause came here upon bill of exceptions, containing the above point upon the admission of evidence, with others which it is not necessary to notice.

The reasons in support of the judgment below were rendered, as in 15 *John. Rep.* 167-8, S. C. ; (1 *Cowen's Rep.* 65, S. C. upon a question of amendment.)

*S. Jones,* for the plaintiffs in error. The Judge decided erroneously, in admitting the petition and schedule presented to the Surrogate by the executors of *Maria Osgood,* as competent evidence to show that she was indebted on the 31*st* of *May,* 1814, and also (subsequently to that day) at the time of her death ; and especially in admitting the petition

and schedule as evidence against those who had never signed, or in any way admitted or recognized them as true.

In Chancery, the answer of one defendant will not be listened to as evidence, even against his co-defendant. This is upon a principle which applies with much greater force here, where admissions out of Court, by third persons, not parties, are insisted upon as taking away the rights of these grantees. (*Phœnix* v. *Dey & others*, 5 *John. Rep.* 412. *Grant* v. *U. States Bank*, 1 *Caines' Cas. Err.* 121. *Leeds* v. *The Mar. Ins. Co.* 2 *Wheat.* 380.) The answer of a minor by his guardian is never received as evidence against the former ; nor will the confession of one partner implicate another, unless made during the continuance of the joint business, and in relation to the partnership estate. The petition and schedule, though sworn to, were no more than a mere *ex parte deposition ;* and it is a most dangerous relaxation of the rules of evidence, to say that this shall be evidence against a stranger. What connexion is there between executors and heirs which makes the acts of the former evidence against the latter ? Their rights and liabilities are entirely distinct. (*Jackson* v. *Hoag*, 6 *John. Rep.* 59.) In *Mason's Devisees* v. *Peters' Administrators*, (1 *Munf.* 437) it was decided, that even a judicial recovery against an executor is no evidence against a devisee or heir. Is a mere admission of higher authority than a judgment at law, upon the very question in dispute ? True, as against the executors themselves, the evidence would be admissible ; but it cannot be so against a mere stranger ; nor would the admission of one co-heir be evidence against another who should be party in the very suit where it was offered, unless both should be so connected in the pleadings as to be incapable of severance. Beside, what renders the decision in this case more strikingly erroneous is, that *Walter F. Osgood*, one of the executors who petitioned, was interested to charge the real estate conveyed.

Again : this petition and schedule were not the highest evidence which the nature of the case admitted. The original evidences of debt should have been produced ; and why not file a bill of discovery, and ask the heirs themselves

for the amount of the debts, instead of relying on the acts of strangers ? *Johnson* v. *Beardslee*, (15 *John.* 3) was relied upon by the Court below ; but the promise of executors, who were also heirs, was there received merely to take the case out of the statute of limitations. It is well settled, that evidence will be received to take a case out of the statute, which is too slight to establish a debt. *Phillips' Ev.* 192 ; 15 *East*, 34, 35 ; and 4 *John. Rep.* 461, are also relied upon ; but these authorities do not apply. It may be that where there is a joint interest, a declaration by one is evidence against all who are parties to the suit in which it is offered ; that is to say, where they all constitute one person. Where there is a privity, or a joint demise, or the plea of the defendants admits a joint demand, perhaps the same rule applies. The authorities cited by the Court will support a class of cases where a witness makes a declaration against his interest, and dies. You may then give it in evidence ; but even this is limited to a case where he could testify to the fact, if alive. No excuse but death will then answer. Absence, sickness, &c. will be unavailable. The principle of these authorities has no application to the present question.

*J. V. Henry*, for the defendants in error. The petition and schedule objected to were the act of *Maria Osgood's* executors. She is the person under whom the defendants claim ; and her executors, appointed by her, were acting within the sphere of their official duty, recognized and required of them by the statute, (1 *R. L.* 450-1, *s.* 22.) They had power, by this statute, to obtain a Surrogate's order, and sell this very real estate which the defendants complain was affected by their act. As the personal representatives of the testatrix, they rendered an account of her debts with a view to a payment of her creditors. They confined themselves to the personalty, and in this view their acts are the most satisfactory evidence of what she owed. No person could perform this duty except the executors, and for this purpose they stood in her place. Suppose we had offered to shew an oral admission of the executors, that when Mrs. *Os-*

ALBANY,
April, 1824.

Osgood
v.
Manhattan
Company.

*good* executed this conveyance she was indebted to the *Manhattan Company* $10,000. Would not this evidence be admissible? Recollect it was not offered to charge the defendants below directly with a debt, but to establish the collateral fact of insolvency? One of the executors, *Walter F. Osgood*, and Mrs. *Genet*, the wife of another, and *Juliana*, the wife of *Samuel Osgood*, were also devisees, having a common interest with the other defendants, in the land; and their acts were received merely as evidence, *prima facie*, that Mrs. *Osgood* was indebted—nothing more. We are asked, why not file a bill of discovery? For what end? Had we done this, we should have been referred to the Surrogate's office. *Mason's Devisees* v. *Peter's Administrators*, (1 *Munf.* 437) does not apply; because, in that case, the judgment was offered as direct and conclusive evidence to charge the realty. Here it was merely one item in the proof to shew the intent of the conveyance. It was not to charge the defendants with a debt, though this might be the consequence of establishing the fraudulent intent. Several analogous cases are cited in 1 *Phillips' Ev.* 191, 192, 193. Among these are the entries and declarations of deceased persons. The signing a bill of lading by a master of a vessel, is admissible to charge the insurer, at the suit of the consignee. (*Haddow* v. *Parry*, 3 *Taunt. Rep.* 303.) So declarations by a person having a joint interest with the party, (1 *Phil. Ev.* 72, 2 *Am. ed.*) or by a rated parishioner upon a question of settlement, are admissible. (*The King* v. *The Inh. of Hardwick*, 11 *East*, 578.) *Gilb. Ev.* 59, *Lond. ed.* 1791, *note* (*v*), states a case of covenant against two defendants, and the affidavit of one was received as evidence against both. Suppose a partner of the ancestor should acknowledge a debt due from the firm—would not this be clearly admissible in evidence against his heirs or personal representatives? The objection, however, if it prevails, will merely be the foundation of a new trial.

*Talcott*, (Attorney General) in reply. It is not disputed, that in order to charge these defendants, ⬤was necessary to shew that the ancestor was insolvent when she conveyed;

ALBANY,
April, 1824.

Osgood
v.
Manhattan
Company.

or, at any rate, so much in debt as to authorize an inference of fraud. This was clearly necessary, to warrant the Court in setting aside a conveyance to the children. To support this allegation, a statement signed by the executors, one only of whom is a devisee and heir, is produced. The petition is dated in *May*, 1816, and, at the close, a list of debts is given, without a single date by which to determine whether they arose before or after the alienation. Yet it was received to prove an indebtedness, not at the time when the inventory was made, (for this was utterly immaterial) but that the grantor was insolvent two years before. Upon what principle, if admissible at all, can this schedule be received to make her indebted in 1814, when she conveyed?

But it was not admissible for any purpose against the defendants below ; and, if so, no matter what other evidence was given—there must be a new trial. (*Marquand* v. *Webb*, 16 *John*. 89.)

In the first place, it was not the best evidence. The creditors themselves should have been called, and the proper documents produced and proved by witnesses, to establish the debts, where there were such. The executors did not know what the debts were. They had probably been told that they were so much ; but, on oath, the creditors might not have sworn to it.

Again : it is enough that the suit was against heirs and devisees, but the acknowledgment by executors ; and the question is, not whether one may charge property, by his confession, in which he is interested, but property in which he has no manner of interest. It is said, that the evidence was not to charge the defendants with a debt; but this is a mistake. It was to make them liable in every sense of the word. Even their persons were to be made liable to a *ca. sa.* It is also said, these executors were acting in reference to personal property, and hence their acts did not affect the realty. We complain that their acts were made to have the latter effect. The decision of the Court below puts it in their power to charge the realty, and they have done so. The case of *Mason's Devisee* v. *Peter's Administrators*, (1 *Munf.* 437) is conclusive. So far as the ca-

ALBANY,
April, 1824.

Osgood
v.
Manhattan
Company.

ses cited from *Phillips* apply, they are not disputed ; but how is it to be shewn that *Samuel Osgood* or *Genet* were, in the least, interested ? True, they intermarried with heirs or devisees ; but they could not confess away their wives' rights. *Walter F. Osgood* is, in fact, interested to have the conveyances set aside at the suit of creditors, as it would relieve him from the heavy incumbrances, by mortgage, upon the lands devised to him as one of the residuary devisees. Indeed, he gets nothing by the will unless the conveyances are avoided.

But it is not true, that the confession of one will bind another, because the one happens to be interested. How is this with regard to joint trespassers, who have an equal interest ? Clearly, one cannot confess away the others' rights. So of a promissory note, signed by two jointly ; the admission of one will not charge the other. So the admission of an endorser, though against his interest, is not evidence to charge the maker. (*Hemings* v. *Robinson, Barn.* 436, 3*d ed.*) But it is said that the confession of one, having a joint interest, is evidence against another having the same interest. If so, you must first shew that such a joint interest exists. This depends here upon the conveyances being void, to establish which the evidence was offered ; and the proposition to admit it is a perfect *petitio principii*. *Mooers* v. *White et al.* (6 *John. Ch. Rep.* 360) is all fours with this case. The statute of limitations was set up by the defendants, who were executors and devisees ; but the evidence was, that one of the executors, as such, had acknowledged the debt within six years. This was overruled by the Chancellor, as the suit was to affect the real estate. He said, even as to the statute of limitations, that the executor, as such, could do no act to waive it as between the creditor and the heir. (6 *John. Ch. Rep.* 373.) In this case, the evidence was admitted, not merely to take the estate from heirs and devisees, but from grantees. No matter whether the grantee be a child of the grantor, or a stranger. The principle is the same. It is still a question whether an executor can make an acknowledgment having a retroactive effect to take the estate away from a grantee.

Again, suppose Mrs. *Osgood* alive. Could she herself confess away the estate granted? No. This is clear, not only upon principle but authority. (*Phœnix* v. *Dey*, 5 *John. Rep.* 412, 426.) Why so? A contrary rule would place the grantee in the power of the grantor at any distance of time, and under any change of circumstances. This is a conclusive answer in itself. In *Arnold* v. *Bell*, (1 *Hayw. Rep.* 397, in note) there was an attempt of this kind. The confessions of the grantor, made after the grant, were offered in evidence; but overruled on the ground that, though evidence against himself, they were not so against any body else. If he cannot make the confession himself, it is very clear that he cannot delegate the power of doing it to his executors.

Even an acknowledgment of record by one joint promissor is not evidence against another. (*Grey et al.* v. *Palmers & Hodgson*, 1 *Esp. N. P. Cas.* 135.) One co-partner cannot bind another by his confession that they were partners. (*Whitney* v. *Ferriss*, 10 *John. Rep.* 66) nor by striking a balance after a dissolution. (*Hackley* v. *Patrick*, 3 id. 536. *Smith* v. *Ludlow*, 6 id. 267, 269.) The *King* v. *Harkwick*, (11 *East*, 578.) went on peculiar grounds. A rated parishioner made the confession which was admitted against the parish, and Ld. *Ellenborough* said he was substantially a party to the suit, and it was like receiving the admission of one of an aggregate company or corporation. Even this doctrine has been denied by very respectable authority. (*The President, &c. of Hartford Bank* v. *Hart*, 3 *Day's Cas.* 493.) But whether the case cited on the other side be law or not, it has no resemblance to the present one.

The admission of this evidence, then, being erroneous, as observed by the gentleman, a *venire de novo* must issue.

Sudam, Senator. One of the questions presented for the consideration of the Court, is, whether the petition to the Surrogate by the executors of Mrs. *Osgood*, stating that the personal estate of the deceased was insufficient to pay her debts, and requesting the aid of the Surrogate in the premises, pursuant to the statute, &c. to which was annexed a

statement of her personal effects, sworn to by the executors, was properly admitted by the Judge at the Circuit, as evidence of her insolvency at the time she executed to her daughters the deeds of the lots in *Cherry Street.* This testimony was admitted by the Judge who presided at the Circuit; and his decision was confirmed by the Supreme Court. It now comes to this Court on a bill of exceptions to his opinion on this and other points.

Having myself arrived at the conclusion that this evidence should not have been received, it will be unnecessary for me to consider the other points in the cause.

In order to make out their case, the plaintiffs below were bound to shew affirmatively, that the defendants were the heirs and devisees of Mrs. *Osgood.* To do this, they were compellable to make out, in proof, that the voluntary conveyances to her daughters were void under the statute to prevent fraudulent conveyances, as to creditors, by reason of her insolvency when she executed the deeds ; and the petition and schedule were offered as *prima facie* evidence of this.

It will be recollected that this petition was never acted on ; and that the executors declined proceeding upon it, on the ground that they had made it out under a misapprehension. The statement of the debts offered to the Surrogate, did not specify the time when they were contracted ; so that we cannot, from this, decide whether they arose before or after the conveyances were executed ; and it was made by persons having only an interest in right of their wives, in the premises in question, except *Walter F. Osgood,* who was, in fact, interested to avoid his mother's conveyance.

It is well settled that if improper evidence be given, although it may be cumulative only, the judgment must be reversed ; for we cannot say what effect such evidence may have had on the minds of a jury. (*Marquand* v. *Webb,* 16 *John.* 89.) This evidence should not, in my opinion, have been admitted, at all, against either the heirs or devisees, admitting that the insolvency of Mrs. *Osgood,* at the time of executing the deeds, rendered them void as to creditors. Upon this point, I do not mean to give an opinion ; but the acts

ALBANY,
April, 1824.

Osgood
v.
Manhattan
Company.

Plaintiffs below were bound to shew affirmatively that defendants were heirs, &c.

Petition never acted on. Debts not dated.

Extent of executors' interest.

If improper evidence be given, though merely cumulative, judgment will be reversed.

ALBANY,
April, 1824.

Osgood
v.
Manhattan
Company.

of executors ought not to bind heirs or devisees, unless in the case of an actual decree of sale by the Surrogate. In the present case, too, the executors themselves, after presenting the petition, declined acting upon it. Under such circumstances, especially, the petition and schedule should not be received against the heirs and devisees ; and particularly in this case, where it goes to charge them personally with the debt of the ancestor. The form of entering judgment for the plaintiffs below, whether against the lands of the ancestor, or against his land and the person of the defendants, cannot alter our decision.

Judgment against executor, no evidence against heir.

Even a judgment against an executor is no evidence against the heir. (*Mason's Devisee* v. *Peter's Administrator*, 1 *Munf.* 437, 455, 456.) If this is inadmissible against the heir, merely to fix the amount of the demand, upon what principle can it be said that an *ex parte* statement by executors (though under oath) shall be evidence for a much more important purpose ; to avoid a conveyance of real estate, and charge the persons and estates of heirs and devisees as upon a false plea.

Grantor's confession, after grant, not evidence against grantee. A *fortiori*, the confession of her executors.

It was the duty of the plaintiffs below substantially to make out their case, before the defendants could be called upon for their defence ; and to effect this, it was necessary for them to prove that the conveyances by Mrs. *Osgood* to her daughters were void. Could this be done by admissions of executors, or any other persons, who were not grantees ? I think not. Mrs. *Osgood's* own confessions, after she had executed the deed to her daughters could not have been admitted. (*Phœnix* v. *Dey*, 5 *John. Rep.* 412.) And will it be contended that executors, named in her will, can make an admission of more effect than her own ? It appears to me this point is settled by the opinion of the late Chancellor in *Mooers* v. *White*, (6 *John. Ch. Rep.* 360,) and *Arnold* v. *Bell*, (1 *Hayw.* 397, *note*.)

Confessions of one in prejudice of another, not receivable, unless both have a joint interest in possession.

It will be recollected that the conveyances to the daughters were in severalty. There could, therefore, be no joint interest in them till they were avoided. To accomplish this, any acts done by the executors, without the concurrence of the devisees, could not be used as evidence upon any principle.

ple. To warrant receiving the admissions of one in preju- <span style="float:right">ALBANY,<br>April, 1824.</span>
dice of another, they must have a joint interest in possession,
not a mere community of interest. (*Gray et al.* v. *Palmers et* <span style="float:right">Thallhimer<br>v.<br>Brinckerhoff.</span>
*al.* 1 *Esp. N. P. Cas.* 135. *Hackley* v. *Patrick*, 3 *John.*
*Rep.* 536. *Smith* v. *Ludlow*, 6 *id.* 267, 269. *Whitney* v. *Fer-*
*riss*, 10 *id.* 66.)

The case cited at the bar, of the *King* v. *Hardwick*, (11 <span style="float:right">Whether con-<br>fession of a<br>corporator is e-<br>vidence against<br>a corporation.</span>
*East*, 578.) does not affect the question. There the admiss-
ion of a parishioner, liable to be assessed for taxes, was re-
ceived, on the ground that the parish was an *aggregate com-*
*pany* of which he was a member. Beside, I think the
ground upon which that case was put very questionable, at
least ; and I find, that in *Connecticut*, it has been directly
overruled as to a corporation aggregate. (*Hartford Bank* v.
*Hart*, 3 *Day*, 493.)

On the whole, I am of opinion that the evidence was im-
properly admitted ; that the judgment must, therefore, be
reversed ; that the record be remitted ; and a *venire de novo*
issue from the Court below.

The Court being unanimously of this opinion, it was
thereupon ORDERED, ADJUDGED and DECREED, that the judg-
ment of the Supreme Court be reversed, with costs in er-
ror, to be taxed, for the plaintiff in error ; and that the
transcript be remitted to the said Supreme Court ; and that
the said Court award a *venire facias de novo*.

SANFORD, Chancellor, being a stockholder in the compa-
ny, gave no opinion.