FOREST *a.* FOREST.

*New York Superior Court ; General Term, January,* 1856.

DIVORCE. — ALIMONY. — SUBMISSION OF SPECIFIC QUESTIONS. — DOWER.

Of the abolition of feigned issues, and of jury trial under the Code, in actions for divorce on the ground of adultery.

The Code has not rendered it necessary or proper that, in actions for divorce, the question of alimony should be submitted to the jury.

The amount of alimony, and the proper order for the custody and maintenance of the children, are matters for the consideration of the court.

Whether in an action for a divorce the court might not, under its general authority to propose questions to the jury, direct them to find specially the value of defendant's property, with a view to use such finding as one of the elements to be

afterwards considered in connection with other circumstances in determining what alimony should be awarded to the plaintiff,—*Query*.

Where the admission of improper evidence could by legal necessity do no injury, it may be disregarded.

Under section 261 of the Code, it rests in the discretion of the presiding judge, at the trial, to submit such questions to the jury as at the time he thinks proper; and if, upon appeal, it appears evident that upon the whole verdict the respondent is entitled to judgment, the circumstance that in addition to a finding upon material questions, there is also a finding upon some that are not material to any determination to be made by a jury,—*e. g*., that in a divorce case they have found upon the question of alimony,—ought not to vitiate the verdict upon the questions properly submitted to them.

The amount of alimony to be awarded upon granting a divorce is within the sound discretion of the court.

And alimony may be made to commence from the filing of the complaint.

In an action for a divorce on the ground of adultery, the defendant, after verdict against him upon the issue of criminality, should be permitted to produce proofs, and either upon a reference or upon a hearing before the court, should be allowed to show such facts as are proper to be considered in determining the amount of alimony, the time when it should commence, &c.

The defendant may be required to give security for the payment of alimony, by lien on his real estate.

A wife to whom a divorce *a vinculo* is granted for the adultery of her husband, is notwithstanding entitled to dower upon his death.

The court cannot require the release of her dower right as a condition of granting a divorce, nor impose the execution of such a release upon her peremptorily.

*It seems* that the award of alimony is subject to modification from time to time, as may be just; and that leave should be given in the decree to apply for such modification as the changing circumstances of the parties may render just.

Appeal from a judgment rendered upon a verdict.

This action was brought by Catharine N. Forest against her husband, Edwin Forest, to procure a divorce on the ground of adultery. The answer denied the charges of the complaint, and set up recriminatory charges of adultery alleged to have been committed by the plaintiff, upon which the defendant prayed to be divorced from her. The action was tried before Chief Justice Oakley and a jury, in December, 1851, and January, 1852—the trial occupying thirty-three days.

On the trial each party put in evidence tending to show the other guilty of adultery, and also evidence tending to rebut the charges made by the other. A large number of exceptions were taken to the rulings of the court admitting and excluding evidence offered.

On behalf of Mrs. Forest evidence was also offered to show the value of the defendant's property, with a view of enabling the jury to determine the amount of alimony to which she would be entitled, in case the verdict were in her favor. This evidence was objected to on behalf of the defendant. The Chief Justice admitted it, observing that it was very desirable to avoid the necessity of going over the proceedings again. The subject of alimony was formerly referred to a proper officer, and his decision was under the supervision of the chancellor. The proper course under the Code was, however, not settled. As the admission of the testimony could have no effect upon the verdict upon the issues, he would receive it.

The jury were then directed to return answers to special questions; the last of which was :—" What amount of alimony ought to be allowed the plaintiff ?" To which the jury answered—" Three thousand dollars."

Upon the whole verdict, judgment was entered, granting the divorce applied for by Mrs. Forest,—denying that applied for by Mr. Forest—awarding to Mrs. Forest three thousand dollars annually, as alimony,—and requiring that the defendant should give security upon his real estate for its payment, and that whenever the right of appeal should have been determined, and the required security tendered, the plaintiff should release her dower in the defendant's real estate.

From this judgment both parties appealed ;—the defendant, upon numerous exceptions to rulings of the court upon evidence offered on the question of adultery, and upon exceptions to the admission of evidence upon the value of defendant's property, and to the submission of the question of alimony to the jury ;—the plaintiff, upon exceptions to that portion of the final decree which required the plaintiff, in certain contingencies, to release her right of dower.

The opinion on the appeal being very voluminous, we omit all that part of it which relates to the questions of evidence involved, and give only the concluding portion, treating of the proper mode of determining the question of alimony, and of the dower right.

*John Van Buren* for the defendant's appeal; after arguing

twenty-three points based upon the exceptions to the rulings upon evidence.

XXIV. The court erred in allowing testimony to go to the jury as to the amount of defendant's property, for the purpose of enabling the jury to determine the amount of alimony to which the defendant would be entitled in the event a verdict was found in her favor. This was not one of the issues of fact which the court directed to be tried by a jury by the special order under which the parties proceeded to trial. Such an issue could not be tried by a jury either before or since the Code. It was not among the issues which the jury were summoned and sworn to try. It was sprung on the defendant at the termination of the trial, and after the plaintiff had twice rested. It not only prejudiced the defendant on the question of the amount of alimony, but was calculated and used to confirm the inferences sought to be drawn from a portion of the testimony, that defendant was corruptly using his abundant means in a conspiracy against his wife's peace and honor.

XXV. The court erred in awarding alimony at the rate of $3,000 a year from the commencement of the action, or at any rate whatever, until the defendant had had an opportunity of meeting and overcoming legal testimony upon the point. The issue was not properly submitted to the jury. No legal testimony was given upon it, and the allowance granted was extravagant, for it was shown by the testimony that the sum of $1,500 a year had been paid to and received by the plaintiff, as her allowance, up to February, 1852.

XXVI. The court erred in allowing the plaintiff's attorney and counsel extra costs, counsel fees and expenses, under the pretence of alimony to the plaintiff. An examination of the item of $3,750, directed by the judgment to be paid to the plaintiff, or her attorney, on February 10, 1852, will show, as the fact notoriously was, that the court did make such an allowance. No credit was given for the $1,500 per annum, paid quarterly in advance, up to and on November 1, 1851. The court must therefore infer that plaintiff was entitled to $4,500 a year while this suit was pending, or see, as the fact was, that the court below designedly made a decree presenting the plaintiff with $1,500 a year for two years. On these

exceptions, a new trial should be ordered, with costs to abide the event.

*Charles O'Conor*, for the plaintiff's appeal.—I. There is no warrant in law or in reason for rewarding the defendant's criminality by an exoneration of his estate from a lien which has attached in favor of the plaintiff by virtue of her marriage. If the plaintiff's inchoate right of dower should ever become perfect, and vest in possession, it may be of great value. It would be monstrous, if the defendant's heirs should be allowed, in such an event, to reap a profit from Mr. Forest's criminality.

II. The statute forbidding the convicted adulterer to marry again during the life of the plaintiff, is diametrically opposed to the principle of the decision appealed from by the plaintiff.

III. The objection to the ruling of the court is, that by the statute and decisions of the Court of Appeals, it is settled that a wife's right of dower is not affected by a decree of divorce. The court seem to have thought that a decree of divorce entirely separated all relations between man and wife, and that nothing of this sort should be allowed to hang as a millstone around the neck of the former husband, but that each party should have a new start, free from all bonds and connections, except the amount of alimony to be paid. The court, however, went out of its way in deciding on this point as it did, though at first it might seem right and proper. Yet, circumstances might conspire to render it unjust. Should Mr. Forest die, leaving great wealth, and the plaintiff survive him, it is manifestly unjust that she should not have the same right of dower that she possessed when a wife. On this ground, the judgment, as respects this question, ought to be vacated.

By THE COURT,* WOODRUFF, J.—after disposing of the twenty-three points urged by defendant upon his exceptions to the rulings respecting the evidence upon the issues.

---

* Present Woodruff and Bosworth, J. J.

The defendant insists that the court erred, in allowing testimony to be given tending to show the value of the defendant's real estate, and in submitting to the jury the question what amount of alimony ought to be allowed to the plaintiff.

At the close of the evidence relating to the question of the guilt or innocence of the parties, or either of them, the plaintiff " offered and proposed to prove the value of the real estate belonging to the defendant, for the purpose of submitting to the jury the question as to the amount of alimony to which the plaintiff should be entitled, in case a verdict was found in her favor on the issues now tried."

The defendant's counsel objected to the introduction of any evidence to the jury as to the value of the property of the defendant.

The court overruled the objection, and the defendant's counsel excepted.

Thereupon the plaintiff recalled a witness, Thomas Whitely, who gave evidence touching the value of the defendant's real estate, which he described; and the value of the several parcels, as estimated by him, amounted in all to from $144,000 to 167,000.

I. Under the provisions of the Revised Statutes, when a bill was filed for a divorce on the ground of adultery, if the offence charged was denied, the Court of Chancery was directed unqualifiedly to direct a feigned issue to be made up, for the trial of the facts contested by the pleadings, by a jury of the country. (2 *Rev. Stats.*, § 39 [40]).

This action was commenced on or about November 10, 1850, and the cause was at issue by the putting in of a reply to the defendant's answer, on or about December 21, 1850.

At that time the terms of the Code relating to issues and the mode of trial, declared that an issue of fact in an action for the recovery of money only, or of specific real or personal property, (§ 253), must be tried by a jury,—" and that *every other issue* is triable by *the court*, (§ 254), which, however, may order the whole issue, or any specific question of fact involved therein to be tried by a jury," &c. By section 72 of the Code, it was also declared that " feigned issues are abolished, and instead thereof, in the cases where the power now

exists, to order a feigned issue, or where a question of fact not put in issue by the pleadings is to be tried by a jury, an order for the trial may be made, stating distinctly and plainly the question of fact to be tried, and such order shall be the only authority necessary for a trial."

It is obvious, that under these provisions of the Code, the only change made by the legislature in the mode of trial of an action for a divorce on the ground of adultery, by a jury, was a direction, that instead of a feigned issue, an order for the trial must be made, stating distinctly and plainly the questions of fact to be tried. And these sections of the Code read in connection with the section of the Revised Statutes above referred to, produce a result in actions for divorce which may be stated thus :—" Where the power now exists to order a feigned issue," *(Code, § 72,) i. e.* " *if the offence charged be denied,*" (2 *Rev. Stats.*, 145, § 39, [40] ) " an order must be made" *(Code, § 72), "for the trial of the facts* contested by the pleadings." (2 *Rev. Stats., ut supra*).

The statute existing before the Code having made a trial of the facts contested by the pleadings before a jury a peremptory requirement, it remained so after the Code, substituting an order in the place of the fiction used for that purpose under the chancery practice.

In this condition of the statutes on the subject, the order for the trial of the specific questions of fact contested by the pleadings in the present action was made.

Before those questions were brought to trial, in the session of 1851, the language of the Code was amended.

This gave rise to the doubt which appears to have influenced the conduct of the present trial.

That doubt seems to have been suggested by the amended phraseology of section 252 (§ 253 of Code of 1852), which is in these terms :—" An issue of fact in action * * * for a divorce from the marriage contract on the ground of adultery, must be tried by a jury."

It is quite clear to our minds, that by the amendment of this section no change was made in the law regulating the trial of this case, in respect to the questions to be tried.

Under the Revised Statutes and the Code as it stood in

1849 and 1850, the "*facts contested by the pleadings*" were to be tried by a jury, in pursuance of an order for such trial, stating plainly and distinctly the questions of fact to be tried.

By the amendment of 1851, " an issue of fact in an action for a·divorce * * * must be tried by a jury—and by section 259 an issue of fact arises upon a *material allegation* in the *complaint, controverted* by the answer, or upon new matter in the answer controverted by the reply, or upon new matter in the reply, " which by section 168 is to be taken as controverted." It need hardly be added that, under this definition, in section 259, "an issue of fact" which is to be tried by the jury, is equivalent to the language of the Revised Statutes, " *the facts contested* by the pleadings ;" and must be tried by a jury.

Whether the phraseology of section 253 (252), now dispenses with the order stating the questions of fact to be tried, it is not necessary to say. If the amendment of that section has not dispensed with such an order, then the questions were properly submitted to the jury, under the order made for that purpose. If by such amendment the order is dispensed with, it was nevertheless regular and proper to submit the same questions to the jury, to be answered specifically, because section 261 of the Code in terms authorizes the court in all cases to instruct the jury to find upon particular questions of fact stated in writing. Both before and since the amendment of 1851, the questions of fact contested by the pleadings, or which is the same thing, the allegations of one party controverted by the other, are to be tried by a jury, and neither before nor since the Code was it necessary to submit to the jury any other questions.

2. Recurring to the complaint in this action, it appears that the plaintiff, after setting forth the charges upon which she asserts her title to a divorce, further avers that the defendant is possessed of sundry lands and the improvements thereon, specifically named in the complaint, and also of personal estate of large value, and that the real and personal estates of the defendant are of the value of two hundred thousand dollars, at the least, and that the clear annual income received therefrom by the defendant is not less than six thousand dollars.

Upon the whole complaint, after praying for a dissolution

of the marriage contract, the plaintiff also prays that the defendant provide a suitable allowance for her support, and that such judgment for such allowance direct the same to be paid or made out of the property of the defendant, and be made a charge or lien upon his real estate within the State of New York.

The defendant, by his answer, after denying the charges of the plaintiff, and setting up recriminatory charges, as, a ground for his claim to be divorced from the plaintiff, avers that a certain portion of his real property contains only about fifty-four acres instead of seventy-four, as charged by the plaintiff, and denies that his real and personal property is worth more than one hundred and fifty thousand dollars, or that his clear yearly income therefrom exceeds four thousand dollars.

Upon the trial, the presiding judge, instead of submitting to the jury the questions raised by the allegations and denials above stated, (viz., what is the value of the real and personal property of the defendant, and what is the clear yearly income therefrom), submitted, in addition to the questions which had been previously ordered to be tried, the distinct question— " 8th. What amount of alimony ought to be allowed annually, to the said plaintiff?"

The objections made by the defendant on the trial, and his exceptions to the ruling of the court in relation to this subject, were two in number.

*First.* He objected to the introduction of any evidence to the jury as to the value of the property of the defendant. The court nevertheless received the evidence of the witness, Thomas Whitely, upon that subject.

*Second.* The defendant's counsel excepted to the submission of question 8, above-mentioned, to the jury.

In relation to the admission of the evidence, it is to be noticed that the offer of the evidence was limited to a specific purpose, and it was received for that purpose only, viz., " for the purpose of submitting to the jury the question as to the amount of alimony to which the plaintiff should be entitled, in case a verdict should be found in her favor."

If it was proper to submit that question to the jury, then the

evidence is relevant and proper. This is not, and cannot be denied.

If that question, in the precise form in which it was put, was not a proper one for the decision of the jury, then the admission of the evidence forms no ground, we think, for setting aside the verdict, because, confined as it was to the specific purpose for which it was introduced, it was wholly unnatural and superfluous as respects any other issue. We can only say we think that it could not have had any influence upon the verdict in any other respect.

Before the Code no issue was formed between parties upon the question of alimony. The facts constituting the grounds of the claim of the party to a divorce, when denied, and the respective allegations of the parties bearing upon those questions were the subject of the feigned issue, and to be passed upon by the jury, (2 *Rev. Stats.*, 145, § 39 [40] ), and if upon the verdict rendered upon those issues, a decree dissolving the marriage contract was pronounced, the court was authorized to make a further decree to provide for the support of the complainant, (§ 44 [45] ), and not only for her support, but also to compel the defendant to provide for the maintenance of the children of the marriage. And the allowance is to be such as the *court* shall deem just having regard to the circumstances of the parties respectively.

Upon an attentive consideration of the subject, we are satisfied that the provisions of the Code have made no alteration in the course of proceeding in this respect, rendering it necessary or proper to submit the question of alimony to the jury. It was no more their province to determine what further order should be made for the support of the plaintiff, than it would be to decide what order should be made to provide for the maintenance of the children of the marriage if any there were. These are matters for the determination of the court.

3. The provisions of section 44 are above stated; and by section 58 [59] of article 5, (2 *Rev. Stats.*, 148), containing general provisions relating to the subject, the court may, when the wife is complainant, during the pendency of the action or *at its final hearing, or afterwards as occasion may require,* make such order between the parties for the care, custody and

education of the children of the marriage, as may seem neces-
sary and proper, and may, *at any time thereafter*, annul, vary
or modify such order. And by section 59 [60] the court may
require security or may sequester the defendant's personal
estate and the rents, &c., of his real estate, and cause them to
be applied "towards such maintenance and allowance as to
the court shall *from time to time* seem just and reasonable."

Under the similar provisions of the Revised Laws of 1818,
(2 *R. L.*, 198–9, §§ 4, 5, &c.), Chancellor Kent says that it
was in the power and discretion of the court to vary the allow-
ance from time to time according to the circumstances of the
parties, and decreed leave to apply to the court for that pur-
pose, "as future circumstances may dictate to be just." (Miller
*v.* Miller, 6 *Johns. Ch. R.*, 91). So in Holmes *v.* Holmes, (4
*Barb.*, 295). Mr. Justice Barculo, under similar provisions rela-
ting to a divorce *a mensa et thoro*, modified the order directing
the husband to provide alimony, making its relinquishment
a condition of the order excluding the husband from the
proceeds of property subsequently accruing to his wife. And
in Lawrence *v.* Lawrence, (3 *Paige*, 267, 1832), the chancellor
held that the proportion of the husband's property or income
which is to be allowed to the wife as alimony, either *pen-
dente lite* or after the termination of the suit, is in the dis-
cretion of the court.

The language of the chancellor, as well as the language of
the statute itself, (§ 44 [45] and 53 [54] ), warrant no distinc-
tion in this respect between an action for a divorce *a vinculo
matrimonii* and a divorce *a mensa et thoro*, and the chancel-
lor adds, that in fixing the amount to be allowed, the court
must take into consideration the nature of the husband's
means, the situation of the parties in society, the amount of
his income, and whether it is from property already acquired,
or from his personal and daily exertions, whether there are
or are not children or other relatives of the husband who
have claims upon him for sustenance, &c., the husband's
ability to support himself and family, &c.

Neither these circumstances nor the discretion which was
to be exercised thereupon, were the subjects of inquiry under
the feigned issue directed by section 39 [40] of the statute.

That, by the terms of the statute, related to the offence charged, and by it were tried and determined the facts upon which the right to a dissolution of the marriage contract depended.

In practice, the courts, in settling the feigned issues, inserted therein enquiries into the matters set up as a defence, as well as the inquiry into the offence charged in the bill; (*Chancery Rules*, 168), and added an inquiry into the legitimacy of the issue of the marriage where that question was distinctly made in the bill of complaint, and which the statute directs shall be determined upon the proofs in the cause. (Cross *v.* Cross, 3 *Paige*, 140; Wood *v.* Wood, 2 *Ib.*, 109; Smith *v.* Smith, 4 *Ib.*, 435. *Rule* 169.)

Nothing in the statute or in the practice of the court made it the duty of the court to embrace in the feigned issue the amount of alimony, or the facts upon which it depended. But after the trial of the feigned issue the cause was brought regularly to a hearing at a stated term of the court, at which if a decree of divorce was granted, such *further* decree was made in respect to alimony and the care, custody, &c. of the children, if any, as seemed just in the discretion of the court; (*Rule* 170; Daggett *v.* Daggett, 5 *Paige*, 509), and a reference for the purpose of ascertaining what was proper, was made if necessary. (Graves *v.* Graves, 2 *Paige*, 62; 2 *Barb. Ch. Pr.*, 259, 260, and cases cited, 267, 268). The case of Burr *v.* Burr, (7 *Hill*, 208), shows that the subject of alimony rests in the discretion of the court in the fullest manner.

As already suggested, the provisions of the Revised Statutes on this subject are unrepealed, and with the single difference that a feigned issue is no longer proper, the practice under the statute does not appear to us to be changed. The questions to be tried by the jury remain the same; the facts contested by the pleadings before the Code were the material allegations going to the design and object of the bill, to wit, the decree of divorce; the "further decree" consequent thereon was then and is now for the determination of the court under all the circumstances of the case, and the situation of the parties, embracing various facts which formed no subject of allegation in the complaint or answer, and not the

subject of consideration at all, until it was first determined whether a divorce should or should not be granted. (See also Forms of Bills for Divorce,.2 *Hoffm. Chy. Pr.*, 2 *Barb. Chy. Pr.*, and other books of precedents).

And that the practice on this subject is not altered by section 253 [252] of the Code, directing that an issue of fact in an action for a divorce shall be tried by a jury, further appears by the rules adopted by the judges of the several courts in 1852 and 1854, (*Rule* 70 [71] ) which. require the cause to be heard at a special term after the trial of the issue.

Our conclusion therefore is, that the " material allegations" in the *complaint* controverted by the answer, (*Code*, § 250), which constitute an issue of fact to be tried by a jury in an action for a divorce from the marriage contract on the ground of adultery, (*Code*, § 253), are those allegations in the complaint upon which the right to the decree for a divorce depends. Those and those only are a necessary part of such a complaint.

The circumstances which, in a subsequent stage of the proceedings, are to regulate the discretion of the court in its further decree awarding alimony, are not necessarily nor regularly any part of the issues between the parties. They are matters which at a proper term and in such form as may be thought proper, are to be laid before the court itself for the guidance of its discretion in a matter with which the jury have nothing to do.

We do not find it necessary to say that the allegations in the present complaint respecting the amount and value of the defendant's property and the income therefrom, and the defendant's denials addressed to those subjects, were wholly irrelevant or should have been struck out on motion.

It has been held by some of the decisions under the Code that any fact may be stated in the complaint which may affect the ultimate relief to which the plaintiff may be entitled, and even such as may in an equity suit affect the question of costs only. We think, however, that the introduction of such averments in an action for a divorce, in no wise enlarges the issues which the statutes require should be submitted to the jury. They are in no sense " the facts constituting the plaintiff's

Forest *a.* Forest.

cause of action." (*Code,* § 142). They are not facts which the plaintiff must prove in order to maintain the suit. And in our judgment it is the better practice not to insert them in the complaint at all.*

4. Nor do we find it necessary to say that the court under its general authority to propose questions to the jury might not (under sections 71 or 261) have directed the jury to find specially what is the amount and annual value of the defendant's property, with a view to use such finding as one of the elements to be afterwards considered in connection with other circumstances, in determining what the further decree in regard to alimony should award to the plaintiff.

We doubt whether in practice that would be deemed the best mode of conducting the trial of the main questions, which, when there are recriminatory charges and allegations of condonation, are already sufficiently complicated. . When the value and income of the defendant's property is found, there remain other matters to be considered and facts to be taken into view, to enable the court to determine what shall be such further decree as already suggested. On this point it must suffice to say, that no such question was in this case ordered to be tried by the jury pursuant to section 71. And no such question was submitted by the judge on the trial under section 261. The comprehensive question,—What alimony ought to be allowed to the plaintiff?—which the judge did submit to the jury, was a question involving not only inquiry into the amount and value of the defendant's property, but many other considerations, and we cannot resist the conviction already expressed, that this question was for the court, and not for the jury.

The result is, that evidence was suffered to go to the jury tending to prove the value of the defendant's real estate, when for the purposes of any question properly submitted to the jury such evidence was wholly irrelevant.

---

* That only the facts which plaintiff must prove to maintain his action should be inserted in the complaint, see Wooden *a.* Strew, 10 *How. Pr. R.*, 48; l *Ante,* 497; Oechs *a.* Cook, 3 *Duer,* 161; 2 *Ante,* 501 : opposed, see Harris *a.* Cone, 10 *How. Pr. R.*, 259 ; 2 *Ante,* 498 ; and compare Waunzer *a.* Baum, 1 *E. D. Smith's C. P. R.*, 261 ; Goodrich *a.* Dunbar, 17 *Barb.*, 644. That additional matter is *not always to be stricken out on motion*, see Martin *a.* Kanouse, 2 *Ante,* 330.

5. If we could see that, evidence showing the defendant's real estate to be worth from $144,000 to $167,000, by any rational view of what is possible could have influenced the minds of a jury unfavorably towards him upon the questions whether he had or had not committed adultery,—or whether the plaintiff was or was not guilty,—we might feel bound to order a new trial, because such evidence was received. (Marquand *v.* Webb, 16 *Johns. R.*, 90; Osgood *v.* Manhattan Co., 3 *Cow.*, 612; People *v.* Wiley, 3 *Hill*, 194; Weeks *v.* Loweree, 8 *Barb.*, 534; Clark *v.* Vorce, 19 *Wend.*, 232; Dresser *v.* Ainsworth, 9 *Barb.*, 625; Myers *v.* Malcolm, 6 *Hill*, 296; Boyle *v.* Colman, 18 *Barb.*, 42; Worrall *v.* Parmlee, 1 *Comst.*, 520; Cary *v.* Sprague, 12 *Wend.*, 41).

The cases cited, and others therein referred to, warrant us in saying that where the admission of the evidence on its face and by legal necessity could do no injury, because it does not bear *in the least degree* on the question in issue, it may be disregarded.

It was not offered nor received for any purpose affecting the main issue, and it was so expressly stated and only received under that limitation.[*]

For the purposes of such an inquiry as this, the jury must be assumed to have ordinary intelligence, and to be governed by conscientious motives. To suppose that proof that the defendant was worth $144,000, could affect their determination of the question whether he or the plaintiff had committed adultery, is to deny to the jury, as we think, common sense. And to suppose that they would allow such evidence when received for another and totally distinct object to influence them improperly on this question, is to deny them common honesty.

We think for this reason, that the admission of the testimony furnishes no ground for reversing the judgment. If we are in error in our conclusion, that the amount of alimony was not a question proper to be submitted to the jury, then it is obvious that the testimony so admitted was competent,

---

[*] See also, Alston *a.* Jones, and cases cited, 17 *Barb.*, 276, 9 *Ante*, 575; Markoe *a.* Aldrich, 1 *Ante*, 55. But compare Hahn *a.* Van Doren, 1 *E. D. Smith's C. P R.*, 411, 1 *Ante*, 575; Fry *a.* Bennett, 1 *Ante*, 289.

because it tended directly to one of the chief elements taken into view in determining that question.

6. The next inquiry is, whether the judgment should be reversed because the question—" What amount of alimony ought to be allowed to the plaintiff?"—was submitted to the jury. We have no hesitation in saying that it ought not.

Although we are of opinion that the jury were not to determine that question between these parties, and that for the purposes of the trial their views upon that question were immaterial, we cannot discover or imagine that any injury resulted to the defendant from their giving their opinion upon that subject, unless the court made it the basis of the further decree for alimony afterwards made, which subject will be presently considered.

The jury having found upon the questions upon which the right to a divorce depended, it was at most, superfluous to ask them to say what alimony should be awarded. Their finding upon the latter question had no possible bearing upon the former.

Under section 261 of the Code, a discretion is given to the court to instruct the jury *in all cases* to find upon particular questions of fact. If the verdict is in other respects correct, it would be unreasonable to say that it must be set aside, if the court should take a finding from the jury upon a matter that was in truth irrelevant; which could not influence the general verdict or the finding upon the other questions.

On that subject the general rule must be that it rests in the discretion of the judge to submit such questions as at the time he thinks proper, and if upon the whole verdict the plaintiff is entitled to judgment, the circumstance that in addition to a finding upon material questions, we have also a finding upon some that are not material to any determination proper to be made by the jury, ought not to vitiate the verdict.

So that we say as in relation to the last point discussed—If we *err* in holding that this was not a proper question to be submitted to the jury, then of course the defendant's exception fails.—And if we are right, then the submission of the question to the jury and their finding thereon was mere surplusage, it injured no one, and should be wholly disregarded.

7. It remains to consider under the defendant's appeal, the proceedings had after the coming in of the verdict in which the jury had found that $3000 ought to be allowed to the plaintiff, and to which the defendant's twenty-sixth and twenty-seventh points are addressed.

The bill of exceptions states that,—" The cause having been brought on for further hearing for the judgment of the court, the defendant's counsel claimed and insisted—

" That the court was not authorized to make any award of alimony upon the matters aforesaid."

If by this was meant that the court was not authorized to award alimony at all, this claim was plainly unwarranted, and in the very face of the statute.

If it was meant that there was an irregularity in the manner of bringing on the cause for a further hearing, then we can only say that the objection for want of regularity should have called the attention of the court to the supposed irregularity.

If it was meant that the *jury* and not the court were to determine the question, the views above expressed, dispose of that objection. And we may add, that if it was a question for the jury, their finding was of the precise amount the court awarded.

If it was meant that the case was not in readiness for such further decree; that the proper inquiry had not yet been made by the court; and that the verdict of the jury on this point ought not to be taken into view, it being without their province; and that a reference to ascertain the facts bearing on the question, or a taking of proofs by the court, in some manner, so that the defendant might produce witnesses as to the *value* not only, but also as to the *income* of the defendant's property, and to the other various circumstances, which, as above stated, are to be considered by the court, in determining the amount of alimony ;—if this was the meaning of the objection, although not very clearly expressed to warrant that construction, it was reasonable.

The language of the subsequent objections, to wit, that three thousand dollars a year was extravagant and unreasonable—that alimony should be only allowed from the date of the

decree, and that if alimony should be awarded from the date of the filing of the bill of complaint, the voluntary provision made by the defendant for the plaintiff's support, from the time of the commencement of the suit until the date of the decree, should be taken into view—seem to indicate that further inquiry was insisted upon.

8. Although the cases above referred to, show that the extent of the allowance rests in the discretion of the court, the cases on this subject do not show that in general the permanent alimony is to take effect from the filing of the bill. In most of the cases the permanent provision is made to commence at or about the time of the decree for a divorce. (Miller *v.* Miller, 6 *Johns. Ch. R.*, 93 ; Peckford *v.* Peckford, 1 *Paige*, 274; and see also Lawrence *v.* Lawrence, 3 *Ib.*, 267; and other cases, above referred to). In Richmond *v.* Richmond, (1 *Greens. Ch. R.*, 90), it is held that there is no fixed rule as to the amount; that each case depends upon its own circumstances; that a regard should be had to the actual rents and profits of the defendant's estate, and the actual wants of the complainant; but not solely to those considerations; and in estimating such rents and profits the estimate should be taken, *not* by its value *at the filing of the bill*, but at the *date of the master's report.* And on the other hand, in Burr *v.* Burr, (10 *Paige*, 30), the chancellor directed explicitly that the alimony should commence from the filing of the bill, (in that respect correcting the decree made by the vice-chancellor, which allowed alimony only from the date thereof). And his decree in this respect is affirmed, on a full discussion of the subject by the Court of Errors. (7 *Hill*, 208). But the chancellor directed that the *ad interim* alimony received by her or her solicitor, *pendente lite*, be deducted. (Rose *v.* Rose, 11 *Paige*, 166).

Our conclusion is, that it was not erroneous to allow alimony from the time when the suit was commenced, if under all the circumstances that seemed just to the court. There was no evidence produced on this further hearing in relation to the voluntary payments by the defendant pending the suit, unless it be, perhaps, the statements of the witness and the affidavits read on the trial as found in the minutes of the court, and these do not appear to have been referred to as the basis of

the further decree. The court is represented as deciding that alimony should be allowed without any deduction for such voluntary payments.

If the facts on this point were agreed to by counsel, it does not so appear. And it is quite difficult to say, upon the statement contained in the bill of exceptions, whether anything was before the court as to the ground of the order, except the pleadings in the action, and the verdict of the jury.

The decree of the court, however, states that the court, "upon consideration of the facts admitted by the defendant in the pleadings," determined that the allowance of three thousand dollars a year from the day this action was commenced during the natural life of the plaintiff, is just," "having regard to the circumstances of the parties respectively," and ordered, adjudged, &c., accordingly.

We have already said that we think the verdict of the jury furnished no proper guide on this question, and the only admissions in the pleadings are, that the defendant's real and personal estate is worth one hundred and fifty thousand dollars, and the income therefrom is four thousand dollars.

9. Upon this part of the case, we think an opportunity should have been permitted to the defendant to produce proofs, and either on a reference or on a hearing before the court, to show the facts and circumstances which are proper to be considered in determining the amount of alimony, the time when it should commence, and whether any and what voluntary or other allowance *pendente lite* had been made to the plaintiff by the defendant. The views which we entertain in regard to the points raised by the plaintiff's appeal from the decree herein, confirm us in our opinion that this portion of the decree should be the subject of further inquiry. It seems to us that that part of the decree which requires the plaintiff to release her inchoate right of dower in the defendant's real estate, must necessarily be taken to have influenced the court in fixing the amount of the plaintiff's allowance during her life, and our conclusions in respect to that requirement of the decree render it necessary that the provision to be made in regard to alimony, should be the subject of inquiry if the defendant shall elect to have a reference for that purpose.

10. We have only to notice the further exception to that requirement of the decree which directs that the defendant give security for the payment of the allowance by a lien upon his real estate within this State, or otherwise as may be directed by the court upon the coming in of the report of the clerk of this court, to whom the matter was referred. No objection to this part of the decree was urged upon us on the argument of the appeal. The statute in terms authorizes the court to require such security (2 *Rev. Stats.*, 48, § 59, [60] ). The practice of the court of Chancery, in like transactions, sanction it. (Miller *v.* Miller, 6 *Johns, Ch. R.*, 93 ; Burr *v.* Burr, 10 *Paige* 38, and cases referred to). And the decree in this respect was within the ordinary power of the court to refer a matter of that description, if it was found convenient.

If, however, the defendant shall elect to have a reference to determine the amount of alimony, the security to be given therefor can be included in the same reference.

The order herein will therefore be, so far as it is based upon the defendant's appeal, that the judgment be reversed, so far as it determines the amount of the alimony to be awarded to the plaintiff, and the time from which it is to be allowed, and a reference so ordered to some proper person to be agreed upon, or appointed by the court on settling the order, unless the defendant shall prefer to allow the judgment in this respect to stand and shall so elect. The same referee may also, as above suggested, inquire into and report what security should be given.

11. The points raised by the defendant upon his appeal being considered, there remains for a determination the exceptions taken by the plaintiff from the decree made on the final hearing.

The decree, after directing the payment to the plaintiff of three thousand dollars by way of annual allowance, and requiring the defendant to give security for the payment thereof, &c., ordered that whenever the right of appeal shall have been determined, either by lapse of time, affirmance by the court of last resort, or a voluntary waiver of the right to appeal, and upon tendering to the plaintiff the required security for the payment of the allowance aforesaid, "then the plain-

tiff shall execute and deliver to said defendant a release of any claim of dower in his real estate, in such form as any justice of this court shall settle and approve."

To this part of the decree the plaintiff's counsel excepted, insisting that no provision should be inserted concerning dower, or if any, that such provision should do no more than give the plaintiff her election when her right to dower should become absolute by her surviving her husband, whether she will take such dower or continue to receive the allowance now ordered in lieu thereof.

We cannot resist the conviction that the court erred in forcing upon the plaintiff this condition.

According to the face of the decree, the court upon the pleadings alone, and upon the defendant's admissions therein, without any proof of the present or probable prospective income derivable from the defendant's real estate, and without any reference to its possible increase in value and productiveness on the further acquisitions of the defendant, arbitrarily require the plaintiff to relinquish all claim to dower therein. And to this the court left her no alternative, unless it be to refuse to take the divorce itself. No doubt the court deemed three thousand dollars a year of more value to the plaintiff, beginning from the commencement of this action, than her inchoate right of dower, but even the option to decline the alimony ordered, and retain her right to dower, does not appear to have been tendered to her. As the judgment stands, the divorce is decreed, and she is peremptorily required to relinquish her right of dower. How her release, mentioned in the decree, is to operate, whether she has such an interest or right as would pass to the plaintiff by a mere release to him, so as to exonerate the land, we need not inquire. The object of the decree was clearly to require such a release as should forever preclude any claim of dower in future.

We apprehend that it is now well settled that the right of a wife to dower in her husband's real estate cannot be prejudiced by any act of his.

It was for some time doubted whether under our statutes a woman divorced *a vinculo matrimonii* had dower in the real estate of her former husband at his death.

The statute (1 *Rev. Stats.*, 740, 741), after providing for the endowment of a widow with the third part of *all* the lands whereof her husband was seized, &c., *at any time during the marriage*, provides in section 8, " In case of divorce dissolving the marriage contract for the *misconduct of the wife*, she shall not be endowed." Chancellor Kent (4 *Comm.* 53, 54, and notes) regards this provision as needless, because a divorce *a vinculo matrimonii* always barred the dower of the wife at the common law, since "she must have been the wife at the death of her husband."

Similar language in the statute concerning divorces (2 *Rev. Stats.*, 146, § 47, [48] ), provides that " a wife being a defendant in a suit for a divorce brought by her husband and convicted of adultery, shall not be entitled to dower," &c.

Notwithstanding the apparent implication from the two statutes, that she would be entitled to dower in all other cases than the one expressly named—viz., a divorce obtained *against her* for her own adultery, or other misconduct, warranting such a divorce, Vice-Chancellor McCoun, in Day *v.* West (2 *Ewd.*, 596), says, " where she proceeds against her husband and obtains a divorce, *a vinculo, all right to dower is gone*, because of the dissolution of the marriage and of the relation of husband and wife. Since it is essential to dower that the marriage should subsist at the death of the husband, she cannot have dower if not the *wife* of the man in whose lands she claims it at the time of his death." The reasoning of the court in Reynolds *v.* Reynolds (24 *Wend.*, 193), seems to warrant such a conclusion; as also Cooper *v.* Whitney (3 *Hill*, 99). See also Chareand *v.* Chareand (1 *N. Y. Leg. Obs.*, 134), and cases therein cited to the rule of the common law on this subject. But in Burr *v.* Burr (10 *Paige*, 25), the opinion of Vice-Chancellor Willard suggests that such is not the rule under the Revised Statutes. On the contrary, that when the wife obtains a divorce from her husband on the ground of *his* adultery, she is still entitled on his death to dower.

And, finally, in Wait *v.* Wait (4 *Comst.*, 95), after a full discussion of the subject, it is definitely settled by the court of last resort that a divorce, dissolving the marriage contract on

the ground of the adultery of the husband, does not deprive the wife of her right of dower in his real estate.

12. We cannot discover then, upon what ground this decree, compelling her to relinquish a right secured to her by statute, can be sustained. The opinion of the Court of Appeals in the case last cited, shows that the alimony contemplated by the statute is not to be taken in lieu of dower.

In Burr *v.* Burr, also, above cited, the fact that the wife, if she survive her husband, would be entitled to dower, was taken into view in the court below, and neither in the court of Chancery nor Court of Appeals was any doubt expressed of the correctness of the Vice-Chancellor's conclusion.

We apprehend that the right of the plaintiff to dower in the event she shall survive the defendant, is given by statute. That her right to allowance under the circumstances of this case (having established her title to a divorce), is clear, and that the court cannot make the release of her right of dower a condition of granting the divorce, or impose the execution of such a release upon her peremptorily.

It is true that the subject of alimony rests in the discretion of the court; but as said in Burr *v.* Burr (7 *Hill*), that discretion is a judicial discretion, and not an arbitrary one, and although the ultimate right of dower in the defendant's real estate, if the plaintiff survive the defendant, may be taken into view in fixing the amount of alimony, there is nothing in the statute which warrants the court in compelling her to relinquish that right, nor has the practice of the court heretofore sanctioned the imposition of any such terms upon the plaintiff.

When the property of the husband consists chiefly of personal estate, entirely subject to the husband's disposal in his life-time, or by will, the inchoate right of dower should properly have little influence upon this question. And when, on the other hand, his property consists chiefly of real estate, her dower in which, in the event of her surviving her husband, would be sufficient for her comfortable support, this should be deemed entitled to much weight in determining the extent of alimony.

13. And we have no doubt of the propriety of accompanying the award of alimony with a provision that in case of the

death of the husband, the same may be modified as may be just in view of the right which will then become absolute in the plaintiff, to have one third of the rents and profits of such real estate during the remainder of her life.

Indeed we are disposed to adopt the view suggested in some of the cases referred to in the foregoing discussion of the points taken on the defendant's appeal, that the award of alimony is subject to modification from time to time, as may be just, and that leave should be given in the decree to apply for such modification as the changing circumstances of the parties, and especially the death of the defendant and the accruing of an absolute title to dower, may render just.

Our conclusion, then, upon this appeal by the plaintiff, coincides with our conclusion under the appeal by the defendant, and is, that the decree so far as relates to alimony and no further, should be set aside, and the parties be permitted a further hearing upon that subject. If, however, the defendant prefers that the decree, so far as relates to the amount of alimony, should stand, then the only modification necessary is to reverse that part of the decree from which the plaintiff has appealed.